IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02520-RMR-TPO

JENNIFER RYLATT,

      Plaintiff,

v.

CITY AND COUNTY OF DENVER,
DEPARTMENT OF FINANCE,

      Defendant.

---

## ORDER

---

**Timothy P. O'Hara, United States Magistrate Judge.**

Before this Court is Defendant's Motion for Dismissal of Plaintiff's First Amended Verified Complaint and Jury Demand [ECF 31] and the Order of Reference [ECF 37] for this Court to rule on it by way of a final order. The Motion is fully briefed. The Court finds that oral argument will not materially assist in the Motion's adjudication. Based on the Parties' briefing, this Court **grants** the Defendant's Motion.

## <u>BACKGROUND</u>

For purposes of this ruling, this Court accepts as true the factual allegations—as opposed to any legal conclusions, bare assertions, or conclusory allegations—that Plaintiff raises in her First Amended Complaint and Jury Demand (FAC) [ECF 30]. The Court construes the well-pleaded allegations in the light most favorable to her. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citing *Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006); *see also*

*Boulter v. Noble Energy*, 521 F. Supp. 3d 1077, 1082 (D. Colo. 2021) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

This Court intends to consider additional sections of the employee manual—also called the Career Services Rules—that are directly relevant to the Parties' dispute. Plaintiff attaches one section of the manual to her FAC, ECF 30-1, and this Court includes for consideration additional sections from the same manual referenced by Defendant. ECF 31 at n. 1 ("Defendant requests the Court take judicial notice of the complete Career Service Rules of the City and County of Denver . . ."). This Court may take those additional sections into consideration even though they are outside the FAC. "In addition to considering the allegations contained within the four corners of the complaint, 'the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *Slavin v. USAA Cas. Ins. Co*., No. 14-CV-01839-LTB-CBS, 2015 WL 514936, at *2 (D. Colo. Feb. 6, 2015) (citing *Jacobsen v. Deseret Book Co*., 287 F.3d 936, 941 (10th Cir. 2002)). *See also*, *U.S. Olympic Comm. v. Am. Media, Inc*., 156 F.Supp.2d 1200, 1204 (D. Colo. 2001). The Career Services Rules is a document that Defendant created; whose content or authenticity neither Party contests; upon which Plaintiff, herself, relies; and which plays a central role in Plaintiff's claims for relief. *See also Maxwell v. Advanced Sterilization Products, Inc*., No. 22-cv-00894-SKC, 2023 WL 6929403, at *4 (D. Colo. Oct. 19, 2023) (including employee manual documents for consideration because they are alleged in the complaint and central to plaintiff's claims).

## I.    An Employment Issue Arises

Plaintiff is a long-time employee of Defendant, having worked for the City & County of Denver for nearly 20 years. ECF 30 at ¶ 7. In 2019, Plaintiff was promoted to the position of

Business Operations Administrator. Her immediate supervisor in that role was the Chief Financial Officer ("CFO"), and in the summer of 2022, Ms. Margaret Danuser became the new CFO and Plaintiff's supervisor. *Id*. at ¶¶ 8-10.

The relevant time period begins on June 9, 2022. Plaintiff was 63 years old. *See id*. at ¶ 62. At no point before this period did Plaintiff receive a reprimand. *Id*. at ¶ 11. Construing the allegations in Plaintiff's favor, a situation developed between Plaintiff and another employee, Ms. Marquez, on June 9, 2022, and lasted until October 14, 2022. Construing the allegations in Plaintiff's favor, Ms. Marquez was hostile toward Plaintiff, accusing Plaintiff of bullying and "triggering." Ms. Marquez continued to complain despite Plaintiff's attempts to ease the situation. Ms. Marquez accused Plaintiff of bullying publicly and reacted harshly when she learned that she would need to attend a meeting alone without Plaintiff. *Id*. at ¶¶ 12-21. Viewing the facts in a light most favorable to Plaintiff, however, it was Ms. Marquez who was acting as the real bully.

Ms. Marquez is younger than Plaintiff, but her exact age is unknown. It is unknown what Ms. Marquez' job was, and what her job position in relation to Plaintiff was, though Plaintiff was not her direct supervisor, *see id*. at ¶ 25.

## II.    Plaintiff Invokes the Dispute Resolution Process

Because her own personal attempts to diffuse the situation with Ms. Marquez had failed, Plaintiff availed herself of Defendant's Open Door Policy. *Id*. at ¶¶ 22-23. The "Open Door Policy" is found at Section 18-10 of Rule 18 of Defendant's "Dispute Resolution" plan. Pursuant to § 18-10(A) thereof, the purpose of the "Open Door Policy" is to encourage "employees . . . to informally and directly discuss work-related issues with their direct supervisors." ECF 30-1 at p. 1. Plaintiff, following the Policy, "attempted to resolve the issues in a professional manner, 'informally and

directly' with Ms. Marquez, but the issues between the two continued to escalate[.]" ECF 30 at ¶ 22.

After trying to resolve the problems with Ms. Marquez directly, on October 18, 2022, Plaintiff emailed her supervisor, CFO Danuser. *Id.* at ¶ 23. Plaintiff's email contained a link to a file that contained "materials which evidenced her concerns and failed attempts to resolve workplace issues [with Ms. Marquez]." *Id*. In the message, Plaintiff also requested "[m]ediation through the OHR to resolve the ongoing issues." *Id.* Plaintiff seems to regard her mediation request as part of Defendant's "Open Door Policy," however, mediation falls under a different section of the Career Service Rules: § 18-20. Although an employee is advised to submit a mediation request to the Career Service Mediation Program, *see* § 18-20(A)(1) of the manual, Plaintiff submitted her mediation request to her supervisor, CFO Danuser. Despite these apparent procedural incongruities, this Court assumes for present purposes that Plaintiff intended to avail herself of the dispute resolution options that Defendant provides in its "Dispute Resolution" plan.

Plaintiff's concern was "the deliberate and obstructive behavior of Ms. Marquez in damaging [her]." ECF 30 at ¶ 37. Plaintiff says that she pursued the mediation in the belief that "the working environment would improve." *Id*. at ¶ 32.

Plaintiff complains that CFO Danuser did not open the link in her email and did not respond to her email. *Id*. at ¶¶ 25-26. Plaintiff also complains that CFO Danuser met separately with an H.R. official (Ms. Korock), Ms. Marquez, and Ms. Marquez' supervisor. *Id*. at ¶ 25.

CFO Danuser later met with Plaintiff on October 24, 2022. Plaintiff characterizes that meeting as a routine weekly "check-in" and therefore unrelated to her mediation request. *Id*. at ¶¶ 27, 33. At that meeting, CFO Danuser "nonchalantly asked Plaintiff what was going on between

her and Ms. Marquez." Plaintiff answered that "she did not know, that she liked her and that she did not know why Ms. Marquez kept insinuating that Plaintiff was 'triggering' her." *Id*. at ¶ 27. In response, CFO Danuser accused Plaintiff of being the bully: "You are bullying [Ms. Marquez]." *Id*. at ¶ 28. CFO Danuser also accused Plaintiff of bullying a previous employee. *Id*. CFO Danuser was "not losing another good employee because of you," she cautioned Plaintiff. *Id.*

Plaintiff wrote an email to CFO Danuser about the accusation of bullying the other employee. *Id.* at ¶ 29. Plaintiff denied knowing about that previous matter. Plaintiff also complained about the unfairness of combining that previous matter with the present matter concerning Ms. Marquez. *Id*.

On October 28, 2022, the H.R. representative, Ms. Korock, informed Plaintiff that there was interest in mediation and that Ms. Korock would be contacting Plaintiff "soon to begin the process." *Id*. at ¶¶ 30, 32.

At another routine, weekly "check-in" meeting, CFO Danuser informed Plaintiff that Ms. Marquez "doesn't want to go to mediation with you," and that there would be no mediation. *Id*. at ¶¶ 33-34. In addition, CFO Danuser cautioned Plaintiff that she had "better watch herself," and she advised Plaintiff to "only speak to [Ms. Marquez] about work related subjects." *Id*. at ¶ 33. CFO Danuser ended the meeting by informing Plaintiff that she would be sending her a follow-up email. *Id*. at ¶ 34.

CFO Danuser sent that follow-up email to Plaintiff on November 14, 2022. "Per our check-in conversation today and last week," CFO Danuser wrote, "I'm sending you a memo documenting our coaching discussion." *Id*. at ¶ 35. That memorandum—to which the Parties refer as "the Coaching Memorandum"—is dated November 7, 2022. *Id*. at ¶ 36. Plaintiff neither attaches the

Coaching Memorandum to the FAC nor discloses its content. Plaintiff only notes that it was added to her employment file where it "undoubtedly would be used against her in considering other job offers." *Id*. at ¶ 35. However, Plaintiff, in conclusory fashion, complains that the Coaching Memorandum: (1) "victimize[d]" her with a "materially adverse employment action," (2) is a communication or action that violates the Open Door Policy and Rule 18 of the Dispute Resolution plan, and (3) was retaliatory.

### III. Plaintiff Takes FMLA Leave

Her attempt to use the dispute resolution process "caused Plaintiff severe physical and mental distress," for which she took FMLA leave. Plaintiff alleges a direct causal relationship between CFO Danuser's actions in response to her use of the dispute resolution plan and her FMLA leave. *Id*. at ¶ 38. Not long after, "[i]n or around December 2022, Plaintiff began the 29-IAP Interactive process with Defendant City as her FMLA was exhausted." *Id*. at ¶ 39.

### IV. Plaintiff Seeks Alternative Employment

When she exhausted her FMLA leave, Plaintiff requested an ADA accommodation[1] to work in another department for a different supervisor. *Id*. at ¶ 39. Plaintiff regarded this accommodation as medically justified (*id*. at ¶ 39), "given the concerns submitted by her medical provider which include the intolerable work environment which no reasonable person could return to" (*id*. at ¶ 43).

According to Plaintiff, Defendant notified her that it "would seek other positions [for her] for 90 days and if a position was not found at the end of the 90 days, Plaintiff would be terminated."

---

[1]    District Judge Rodriguez dismissed Plaintiff's claim for the failure to accommodate under the FMLA with prejudice. ECF 28. Therefore, that particular claim is not before this Court now.

*Id.* at ¶¶ 40, 58. Plaintiff "applied for more than 4 positions within the City, and in most cases she was not given the opportunity to interview." *Id.* at ¶ 41. Plaintiff complains that the Coaching Memorandum in her employment file and the general harm to her reputation diminished her prospects at obtaining other employment internally. *Id.* at ¶ 41.

Plaintiff resigned on January 17, 2023, effective January 28, 2023. *Id.* at ¶¶ 43-44.

On or about May 23, 2023, Plaintiff filed her Charge of Discrimination with the EEOC, and she received a Notice of Right to Sue on June 13, 2023. *Id.* at ¶¶ 46-47. Defendant does not seek dismissal for the failure to comply with any pre-suit exhaustion or filing requirement.

## **LEGAL STANDARD**

### I.    **Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of a plaintiff's complaint. *See Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that a plaintiff pleads facts that allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. *Twombly* requires a two-prong analysis. First, a court must exclude from consideration "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Iqbal*, 556 U.S. at 679–80. Second, a court should focus on the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, then that claim survives the

motion to dismiss. *See id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Safe Streets All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011)). Thus, while the Rule 12(b)(6) standard does not require a plaintiff to establish a prima facie case in a complaint, the elements of each cause of action may help to determine whether the plaintiff has set forth a plausible claim. *See Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action," so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "An allegation is conclusory if it states an inference without underlying facts or if it lacks any factual enhancement." *Frey v. Town of Jackson, Wy.*, 41 F.4th 1223, 1232-33 (10th Cir. 2022). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "The degree of specificity needed to establish plausibility and provide fair notice depends on the context and the type of case." *Frey*, 41 F.4th at 1233. "[W]here the well-pleaded

facts do not permit the court to infer more than the mere possibility of misconduct," the complaint

has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id*. (quotation

marks and citation omitted).

**DISCUSSION**

Plaintiff's pleading has been dismissed once before. ECF 28. Magistrate Judge James P.

O'Hara issued a Recommendation [ECF 25] to dismiss Plaintiff's original Complaint. District

Judge Rodriguez agreed that Plaintiff's claims should be dismissed and gave Plaintiff leave to

replead three aspects of the original claims. ECF 28. The FAC represents Plaintiff's amended

versions of those three claims, which this Court considers in turn below.

**I.      Non-Compliance with the Open Door Policy**

Plaintiff alleges retaliation in violation of the dispute resolution plan's Open Door Policy.

She says that she followed the Open Door Policy by seeking help to resolve a workplace dispute

and suffered a negative consequence (a Coaching Memorandum in her employment file) as a

result. However, for this Court to allow the claim to proceed, Plaintiff must couch Defendant's

alleged failure to comply with a term of the dispute resolution plan as a plausible cause of action.

Plaintiff initially did not do so. Magistrate Judge James P. O'Hara recommended dismissal with

prejudice of the original iteration of this claim because it was "not [a] cognizable cause[] of

action." ECF 25 at pp. 13. District Judge Rodriguez agreed that the claim should be dismissed, but

sustained Plaintiff's objection to the dismissal with prejudice, stating "[i]t is possible Plaintiff may

be able to point to law creating a cause of action under the Open Door Policy." ECF 28 at p. 9. At

issue is whether Plaintiff now states a cognizable claim for legal redress.

After receiving specific instructions from District Judge Rodriguez to "point to law creating a cause of action *under the Open Door Policy*," the Plaintiff added only minimal, factual information and no legal support in the FAC to support this claim. *See generally* ECF 31-1. Plaintiff cites to a few Colorado cases that recognize that "an employee who is hired for an indefinite period is presumed to be an at-will employee, but this presumption may be rebutted." *Cummings v. Arapahoe Cty Sheriff's Dept.*, 440 P.3d 1179, 1185 (Colo. App. 2018) (citing *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708 (Colo. 1987)); *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1357 (citing *Keenan*, 731 P.2d at 708)). However, those cases involve provisions from employee manuals regarding termination procedures, not dispute resolution procedures. *See Keenan*, 731 P.2d at 711; *Churchey*, 759 P.2d at 1357. Furthermore, only *Cummings* addresses an employee manual with a disclaimer similar to that which exists in the present case,[2] and the *Cummings* court found that the disclaimer precluded an implied contract claim. 440 P.3d at 1190 ("As a matter of law, these disclaimers preclude a successful implied contract claim based on any rights other than those that effectuate the specific due process rights granted by section 30-10-506.")

As a result, this Court finds that Claim One should be dismissed. Since Plaintiff had an opportunity to provide a sufficient legal basis upon which this claim could survive and failed to do so, this Court finds that further amendment on this basis would be futile. This claim is dismissed with prejudice.

---

[2] "The Career Service Rules do not create or constitute any contractual rights between or among the City and County of Denver, the Career Service Board, the Office of Human Resources and any employee or applicant for employment." "Career Service Rules," City and County of Denver (Career Service Rules and Revisions - City and County of Denver) (last visited June 21, 2025).

## II.    Retaliation (FMLA)

The Second Claim for Relief alleges that Defendant took adverse action against Plaintiff in violation of the FMLA. Previously, Magistrate Judge James P. O'Hara recommended the dismissal of this claim without prejudice for the failure to plead sufficient facts by which to determine whether she pleads a plausible claim. ECF 25 ("The Complaint does not allege sufficient facts that would allow this Court to draw a reasonable inference of 'bad intent' or 'retaliatory motive' by Defendant in response to Plaintiff's request to switch departments and supervisors upon her return from FMLA leave.") District Judge Rodriguez also dismissed this claim without prejudice. ECF 28 ("Plaintiff has not sufficiently alleged a causal connection between the FMLA leave and the Coaching Memorandum because the Coaching Memorandum was written before Plaintiff's protective activity of taking FMLA leave.") (citing *Utter v. Colclazier*, 714 F. App'x 872, 880-81 (10th Cir. 2017)). Despite the benefit of those rulings, and two judges demanding additional support, Plaintiff adds no well-pleaded facts to support her claim.

There are two causes of action through which employees may vindicate their Family and Medical Leave Act, 29 U.S.C. § 2615 ("FMLA") rights. First, § 2615(a)(1) permits suit if the employer interferes with the employee's ability to use FMLA leave. That provision is not applicable here. There is nothing in the FAC that suggests that Plaintiff suffered any denial of her FMLA rights or that her attempt to use her FMLA rights was interfered with in any way. Plaintiff returned to work after exhausting her FMLA leave. ECF 30 at ¶ 39.

Second, § 2615(a)(2) permits suit if the employer allows the employee FMLA leave but retaliates with an adverse employment action after the employee returns. *Campbell v. Gambro Healthcare, Inc*., 478 F.3d 1282, 1287-88 (10th Cir. 2007) (citing *Doebele v. Sprint/United Mgmt.*

*Co.*, 342 F.3d 1117, 1136-38 (10th Cir. 2003)). The elements of a prima facie FMLA retaliation claim are: (1) the employee engaged in protected activity, (2) the employer took an action that a reasonable employee would find materially adverse, and (3) there is a causal connection between the protected activity and the adverse action. *Campbell*, 478 F.3d at 1287. The third element also requires a showing that the employer acted with an improper, retaliatory motive. *Id*.

The FMLA does not increase Plaintiff's employment rights. "An employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to . . . her FMLA request than . . . she did before submitting the request." *Campbell*, 478 F.3d at 1289 (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)). An employer still may take adverse action against an employee if the employer has an independent reason to do so. The mere fact that an employee asks for FMLA leave or used FMLA leave does not shield the employee from an otherwise legitimate adverse action.

Plaintiff bases her retaliation theory on two adverse employment actions. The first one is the Coaching Memorandum. However, as noted by Judge Rodriguez, it predates Plaintiff's use of FMLA leave. Plaintiff had a meeting with her supervisor on November 7, 2022 (ECF 30 ¶ 33), which implies that she still was at work and had not left on FMLA leave at that time. Plaintiff expressly states in her Response that her supervisor wrote the Coaching Memorandum <u>before</u> her FMLA leave. ECF 33 at p. 12. That memorandum is dated November 7, 2022 (ECF 30 ¶ 36) which was emailed to Plaintiff on November 14, 2022 (*id*. ¶ 35). Consequently, there is no causal relationship between the Coaching Memorandum and Plaintiff's use of FMLA leave. Plaintiff's theory that by placing the Coaching Memorandum in her employment file, Defendant "diminished" her employment rights generally—including FMLA leave—for the <u>future</u>, *id*. at p.

12, is too speculative and attenuated to show causation for this cause of action.

The second alleged adverse action is what Plaintiff characterizes as a threat of potential termination. ECF 30 at ¶ 58. This is in reference to the work accommodation that Plaintiff requested after she had exhausted her FMLA. *Id.* Plaintiff did not want to return to her previous position because to do so would mean working under CFO Danuser. *Id.* at ¶ 57.

Plaintiff had begun "the 29-IAP Interactive process" through which she "requested ADA Accommodation/clearance to work in another department underneath supervision other than Danuser" and "submitted medical justification." ECF 30 at ¶ 39. Defendant notified her that it "would seek other positions [for her] for 90 days and if a position was not found at the end of the 90 days, Plaintiff would be terminated." *Id.* at ¶¶ 40, 58. What Plaintiff regards as a threat of future termination, Defendant says is a neutral statement of Plaintiff's ADA rights. ECF 31 at p. 8.

Defendant cites to Rule 12-64 of the employee manual which sets forth the rule for reassignment as an accommodation:

> If no vacant positions become available during the three-month reassignment period, the ADA Coordinator will, in most instances, terminate the IAP and disqualification proceedings may be initiated by the employee's department or agency.

Citing *Smith v. Midland Brake, Inc*., 180 F.3d 1154 (10th Cir. 1999) and the EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the ADA, Defendant argues that Rule 12-64 states the ADA-required process. Notifying an employee of her rights does not constitute an adverse action. Consequently, Defendant did not retaliate against Plaintiff's use of FMLA leave by notifying her of her ADA accommodation rights and by giving her the benefit of that opportunity to find alternative employment. ECF 31 at p. 8.

Even without Defendant's citation to the employee manual, Plaintiff's FMLA retaliation claim still would not be plausible. There is nothing in the FAC that suggests "bad intent" or "retaliatory motive" against Plaintiff because she took FMLA leave. This Court does not find the case law that Plaintiff cites to be on point or her legal arguments persuasive. ECF 33 at pp. 11-12 (*Anderson v. Coors Brewing, Co*., 181 F.3d 1171, 1179 (10th Cir. 1999) (addressing a plaintiff terminated from employment two months and one week after filing an EEOC claim); *Ramirez v. Okla. Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (plaintiff's demotion and dismissal one month and a half after submission of a grievance was sufficient to prove retaliation at the pleading stage).

Plaintiff's Second Claim for Relief therefore is dismissed. Because the same pleading defects remain despite the benefit of the Court's prior rulings, the Second Claim for Relief (and any FMLA-based claim) is dismissed with prejudice and without leave to amend.

## III.    Age Discrimination

For her Third Claim for Relief, Plaintiff alleges violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, *et seq*. ("ADEA"). In his Recommendation, Magistrate Judge James P. O'Hara cited the elements of unlawful age discrimination as requiring Plaintiff to show (1) membership in the ADEA protective class, (2) an adverse employment action, (3) qualification for the position at issue, and (4) treatment less favorable than others not in the protected class. ECF 25 at p. 10 (citing *Jones v. Okla. City Pub. Sch*., 617 F.3d 1273, 1279 (10th Cir. 2010)). "[T]he elements of a prima facie discrimination case are 'neither rigid nor mechanistic,' . . . "and the Tenth Circuit has instructed that this is 'particularly true in an age discrimination case.'" *Scribner v. Durango Coca-Cola Bottling Comp*., No. 23-cv-01263-NYW-KAS, 2023 WL 7003492, at *3

(quoting *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1146 (10th Cir. 2008);

(also quoting *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1056 (10th Cir.

2020)). While Plaintiff is not required to prove a prima facie case for each element, "she is required

to set forth plausible claims." *Khalik,* 672 F.3d at 1192. And "the elements of each alleged cause

of action help to determine whether Plaintiff has set forth a plausible claim." *Id*. (citing

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002); *Frappied v. Affinity Gaming Black Hawk,

LLC*, 966 F.3d 1038, 1054 (10th Cir. 2020)).

Magistrate Judge James P. O'Hara found the second and fourth elements were not pleaded

sufficiently. Plaintiff left unclear how the Coaching Memorandum constituted an adverse action,

and if it did, Plaintiff failed to plead sufficient facts "that allow this Court to reasonably infer that

Plaintiff, as a result of her age, was treated less favorably than those younger than her – specifically

Ms. Marquez." ECF 25 at p. 11. District Judge Rodriguez agreed. ECF 28 at p. 8. Dispositive here

is whether Plaintiff pleads the second and fourth elements sufficiently in the FAC.

To address Magistrate Judge James P. O'Hara's and District Judge Rodriguez' concerns,

Plaintiff added three paragraphs to Claim Three of the FAC (ECF 30 at ¶¶ 63-65) as well as some

additional information about the impact of the Coaching Memorandum in the FAC's background

section (*id*. at ¶¶ 35, 41). Plaintiff alleges differential treatment between her and Ms. Marquez, a

younger employee. *Id.* at ¶ 63. Plaintiff points to Defendant's failure to investigate her grievance

about Ms. Marquez and the allegations regarding a former employee. *Id.* at ¶ 64. And Plaintiff

alleges that the way in which Defendant handled the entire matter, as well as issuance of the

"damaging Memorandum," were based on Plaintiff's age. *Id.* at ¶ 65.

15

This Court considers below whether Plaintiff's changes to the FAC suffice to present a plausible claim of age-based employment discrimination.

A.    **Discriminatory Motive**

A plausible ADEA claim requires a showing that Defendant took adverse action <u>because</u> of Plaintiff's age. In other words, Plaintiff must demonstrate that Defendant acted on the basis of an unlawful discriminatory motive. To do so, Plaintiff must do more than make a conclusory assertion of age discrimination. As Magistrate Judge James P. O'Hara explained in his Recommendation, the mere fact that Plaintiff was older and Ms. Marquez was younger is insufficient. ECF 25 at pp. 11-12. As District Judge Rodriguez explained in her Order, Plaintiff's allegation that Defendant simply took Ms. Marquez's word over hers also is insufficient. ECF 28 at p. 8.

Despite the benefit of these rulings and the opportunity to re-plead, Plaintiff offers little clarity about how Defendant's reaction to the dispute between Plaintiff and Ms. Marquez indicates age-based discrimination. Construing the FAC and Response very broadly and giving her every benefit of the doubt, this Court discerns Plaintiff's argument to be that Ms. Danuser handled her request for help with Ms. Marquez in a discriminatory way against her because of her age. The Coaching Memorandum, contrary to the Defendant's own Open Door Policy, portrayed the older Plaintiff in a negative light and was part of the discriminatory way in which Ms. Danuser handled the matter. Defendant's failure to honor the anti-retaliation promise of its Open Door Policy thereby reveals the Defendant's discriminatory motive (ECF 30 at ¶¶ 35-37), which is "evidence of discriminatory animus and action" (ECF 33 at p. 9). In this way, the Coaching Memorandum was the product of differential treatment and thus an indicator of discriminatory motive.

It is in this respect that Plaintiff finds a cognizable cause of action through which to raise her grievance about Defendant's non-compliance with the Open Door Policy's non-retaliation promise. Even viewing Plaintiff's allegations in a light most favorable to her, Plaintiff's claim is not yet plausible, however.

**B.    Adverse Employment Action**

The second element of an age discrimination claim requires Plaintiff to plead an adverse employment action. The hallmark of an "adverse employment action" is an act that causes a significant negative change in employment status or an employment benefit. *See Dick v. Phone Directories Co., Inc*., 397 F.3d 1256, 1268 (10th Cir. 2005) ("An adverse employment action includes acts that 'constitute [] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'"). Based on Plaintiff's FAC, it is not clear exactly what adverse employment action Plaintiff suffered.

Plaintiff appears to focus on the Coaching Memorandum. Both Magistrate Judge James P. O'Hara and District Judge Rodriguez discussed in their prior rulings the conclusory nature of how Plaintiff attempted to use the Coaching Memorandum to meet this element. Despite the fact that both judges flagged this deficiency in Plaintiff's pleading, she does little more to explain how the Coaching Memorandum meets the definition of an adverse employment action. First, Plaintiff still does not attach it or discuss what it says. Nevertheless, this Court gives Plaintiff the benefit of the doubt at this stage and assumes for present purposes that the Coaching Memorandum's contents are negative and false.[3] In addition, this Court assumes that the Coaching Memorandum is such

---

[3]    Plaintiff alleges that the Coaching Memorandum is supposed to reflect a "coaching

that it could have a direct bearing on her employment and thus could be considered an adverse employment action. *Dick*, 397 F.3d at 1270 (detailing how disciplinary actions that have a "direct bearing" on future employment can constitute adverse actions.) (citing *Roberts v. Roadway Express, Inc.*, 149 F.3d 1098, 1104 (10th Cir. 1998)); *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir. 1996)).

Based on the allegations in the complaint, however, more information is needed to make a plausible ADEA claim. As it is, the Coaching Memorandum had no causal relationship with the cessation of her position as a Business Operations Administrator. There is no indication that Defendant fired her or demoted her from that job <u>because of</u> the Coaching Memorandum. Rather, it was Plaintiff herself who asked for re-assignment away from her supervisor as an ADA accommodation. ECF 30 at ¶ 39. Also problematic is that Plaintiff never alleges that the Coaching Memorandum was written negatively <u>because of her age</u>.

Rather, this Court construes Plaintiff's FAC and Response as presenting the Coaching Memorandum as an adverse employment action with respect to its impact on her ability to find another, alternative position within Defendant (or more precisely, to work for a different supervisor) after she returned from FMLA leave. This concerns Plaintiff's use of Defendant's "29-IAP Interactive process" that gave her a 90-day period to seek alternative employment. Plaintiff says that she "applied for more than 4 positions" as part of this process, "and in most cases she was not even given the opportunity to interview." ECF 30 at ¶ 41. However, Plaintiff does not allege that those with hiring authority for these lateral job moves rejected her <u>because of her age</u>.

---

discussion" between CFO Danuser and Plaintiff that never occurred. ECF 30 at ¶ 36.

If it is Plaintiff's theory is that the Coaching Memorandum dissuaded Defendant from offering her a suitable, alternative position, then Plaintiff should allege that. Plaintiff alleges that the Coaching Memorandum "became a part of her personnel records" and otherwise harmed her reputation with the result that it "diminished" her "prospects of employment in other Departments/Positions." *Id*. at ¶ 41. Plaintiff reiterates that the Coaching Memorandum "became a part of [her] employment record which undoubtedly would be used against her in considering other job offers." *Id*. at ¶ 35. This is the strongest instance of an adverse employment action that Plaintiff identifies. Also, if it is Plaintiff's theory that the Coaching Memorandum and the Defendant's failure to accommodate Plaintiff's alternative employment request were the result of Plaintiff's age, Plaintiff should allege that as well. More is required here, considering this is a case where the Plaintiff was neither demoted nor terminated. *Dick*, 397 F.3d at 1268 (the determination of what is an adverse employment action is a "case-by-case approach," one that "examin[es] the 'unique factors relevant to the situation at hand.'") **Plaintiff must be prepared to support *with case law* how the negative impact of a written reprimand, combined with the failure to accommodate a request for alternative employment, constitutes the kind of "adverse employment action" needed to state an ADEA claim.**

### C.    Summary

Plaintiff added information to the FAC that could broadly state the contours of an ADEA claim. However, there is still need for Plaintiff to re-plead it. There is need for the Plaintiff to state precisely what her theory of age discrimination is. She shall clarify exactly what adverse employment action was taken against her <u>because of her age</u>. She shall do more than repeat the legal definition of an ADEA claim and make conclusory assertions of age discrimination. Rather,

she shall plead the claim with a predicate that <u>shows</u> unlawful discrimination. She shall attach the Coaching Memorandum to her Second Amended Complaint to provide needed context, or provide a substantial summary if the document is not available. This Court therefore grants the Motion to Dismiss, but it dismisses Claim Three without prejudice. *This is Plaintiff's final chance to amend.*

## IV.    Leave to Amend

Dismissal of a case is a harsh remedy, and as a general rule, a litigant should have the opportunity to amend the complaint and cure pleading defects. *See Hall v. Bellman*, 935 F.2d 1106, 1109–10 (10th Cir. 1991); *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The Court does not find that amending the age-discrimination claim (Claim Three) is futile.

Dismissal with prejudice, by contrast, is appropriate if the complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6) and granting leave to amend would be futile. *Rosenfield v. HSBC Bank, USA*, 681 F.3d 1172, 1189 (10th Cir. 2012); *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014). On that basis, this Court finds that breach of the Open Door Policy (Claim One) and the FMLA-based claim (Claim Two) should be dismissed with prejudice.

## <u>CONCLUSION</u>

Accordingly, the Motion to Dismiss [ECF 31] is **granted**, and all three claims are dismissed. The First and Second Claims for Relief are **dismissed with prejudice**.

The Third Claim is **dismissed without prejudice**, and Plaintiff may file a Second Amended Complaint to re-state it in compliance with the above instructions. Plaintiff shall file her Second Amended Complaint within three weeks of this Order, i.e., by **July 24, 2025**. Absent extraordinary circumstances, this will be Plaintiff's last attempt to amend her complaint.

SO ORDERED.

DATED at Denver, Colorado, this 3rd day of July, 2025.

BY THE COURT:

_____
Timothy P. O'Hara
United States Magistrate Judge